## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JENNIFER IVISON,<br>751 21st Street<br>Pasadena, Maryland 21122<br><br>      Plaintiff,<br><br>v.<br><br>BOARD OF EDUCATION OF PRINCE<br>GEORGE'S COUNTY,<br><br><u>Serve</u>:  Dr. Kevin M. Maxwell, CEO<br>        Office of the Chief Executive Officer<br>        Sasscer Administration Building<br>        14201 School Lane<br>        Upper Marlboro, Maryland 20772<br><br>      Defendant. | **\*\*Jury Trial Demanded\*\***<br><br>Case No.: _____ |

## <u>COMPLAINT AND JURY TRIAL DEMAND</u>

COMES NOW, Plaintiff, JENNIFER IVISON, by and through her undersigned counsel, Jay P. Holland, Esq., and the law firm of Joseph, Greenwald & Laake, P.A., and files this Complaint and sues Defendant, BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, for unlawful discrimination on the basis of Plaintiff's sex and race in violation of Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and as cause therefore states the following:

## <u>INTRODUCTION</u>

1.      This is a civil action and claim for damages brought by Jennifer Ivison, a former Custodian and employee of Defendant in the Prince George's County Public Schools System, ("PGCPS"), at Mary Harris Mother Jones Elementary.  Ms. Ivison, a Caucasian female, was

sexually harassed by another employee, Delonte Butler, ("Mr. Butler"), an African-American male.   Ms. Ivison was also verbally harassed and threatened by Vera Animashaun ("Ms. Animashuan"), an African-American female, on the basis of her race.  At all times relevant to this action, Plaintiff reported to the Building Superintendent, Randy Rouse, ("Mr. Rouse"), who was Plaintiff's direct supervisor.   After conducting an investigation, on April 19, 2018, the Equal Employment Opportunity Commission, ("EEOC") substantiated Ms. Ivison's claims, finding that Ms. Ivison "was subjected to sexual harassment, race harassment, and was constructively discharged due to her sex, race and in retaliation for engaging in a protected activity in violation of Title VII."

2.      On or about June 2015, Mary Harris Mother Jones Elementary's Custodial Night Lead Supervisor, Mr. Butler, began to harass Plaintiff on the basis of her sex by grabbing and scratching his groin and overtly pulling on his penis in Plaintiff's presence. Plaintiff, feeling very uncomfortable, reported the incident to Building Superintendent, Mr. Rouse.  Mr. Rouse spoke with Mr. Butler and both Plaintiff and Mr. Rouse expected that the conversation would correct Mr. Butler's behavior. However, Mr. Butler failed to correct his behavior, and, instead, escalated his offensive and harassing sex-based behavior towards Plaintiff.   Mr. Butler took joy in the discomfort experienced by Plaintiff as a result of his sex-based behavior.  Defendant failed to take any remedial action against Mr. Butler for his conduct.

3.      As Mr. Butler's actions became more and more aggressive, a number of Defendant's agents became aware of Mr. Butler's increasingly offensive, unwelcome, and harassing sex-based behavior. However, Defendant failed to take any remedial action against Mr. Butler until nearly a year after Plaintiff's initial complaint.

4.      On or about May 2016, Plaintiff became aware of rumors that Ms. Animashaun, Mary Harris Mother Jones Elementary's Cafeteria Manager, degraded and insulted Plaintiff on the basis of her race to other employees of Mary Harris Mother Jones Elementary.  Ms. Animashaun launched racist insults towards Plaintiff, frequently failing to refer to her by name, but, instead, as "a dirty white bitch."  Ms. Animashaun purposely referred to Plaintiff as "a dirty white bitch" to degrade and offend Plaintiff on the basis of Plaintiff's race.  Ms. Animashaun's negative animus towards Plaintiff, on the basis of her race, was so strong that Ms. Animashaun told other Mary Harris Mother Jones Elementary employees that she wished to physically assault Plaintiff.

5.      Ms. Animashaun's degrading, humiliating, and race-based behavior towards Plaintiff only escalated. Specifically, on one particular occasion, Plaintiff witnessed Ms. Animashaun purposefully flood the kitchen with a mixture of water and bleach and demand that Plaintiff clean up the mess. Ms. Animashaun's actions were also witnessed by Mr. Rouse, an African-American male, who was disgusted.  Plaintiff was degraded, humiliated, and embarrassed by Ms. Animashaun's vicious and vile race-based conduct. Plaintiff and Mr. Rouse both complained to the Principal of Mary Harris Mother Jones Elementary, who disregarded Plaintiff's concerns and took no corrective action. Despite having knowledge of Ms. Animashaun's discriminatory and race-based behavior, Defendant never took remedial action.

6.      Due to (1) the cumulative stress resulting from Mr. Butler's and Ms. Animashaun's conduct; and (2) Defendant's failure to take any remedial action against Mr. Butler or Ms. Animashaun, Plaintiff's working conditions at Defendant became intolerable. As a result, Plaintiff was left with no choice but to resign from her employment with Defendant on August 26, 2016, constituting an unlawful, retaliatory constructive discharge.

## JURISDICTION AND VENUE

7.      The events giving rise to this action occurred in the State of Maryland within Prince George's County where Plaintiff performed her job responsibilities as a Custodian at Mary Harris Mother Jones Elementary.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

9.      This action for unlawful sex and race-based discrimination, as well as retaliation, is brought pursuant to 42 U.S.C. §2000e-2(a)(1) and 42 U.S.C. § 2000e-3(a).  Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

10.     Plaintiff has exhausted her administrative remedies and commences this action more than 180 days after filing a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC"), and within 90 days of receiving her issuance of her Notice of Right to Sue.

## PARTIES

11.     Plaintiff, Jennifer Ivison, is a Caucasian female who resides in the State of Maryland. Plaintiff is a former employee of Defendant, who was at all times relevant to this action, employed in the lawful profession as a Custodian at Mary Harris Mother Jones Elementary, a school in the Prince George's County Public School System.

12.     Defendant is the Board of Education of Prince George's County, which may sue and be sued. Defendant operates the Prince George's County Public School System.

## FACTS COMMON TO ALL COUNTS

13.     Plaintiff is a former employee of Defendant who most recently served as a Custodian at Mary Harris Mother Jones Elementary, ("Mother Jones"), a school in the Prince George's County Public School System, from 2006 through August 23, 2016.

14.     Plaintiff is a Caucasian female.

15.     Following the commencement of her employment, Plaintiff was initially assigned to provide custodial services at Deerfield Run Elementary in Laurel, Maryland.

16.     On or about October 2011, Plaintiff began working as a full-time Custodian at Mother Jones, in Adelphi, Maryland.

17.     At all times relevant to this action, Plaintiff reported to Building Superintendent, Randy Rouse, an African-American male, who was Plaintiff's direct supervisor.

18.     Delonte Butler was the Custodial Night Lead Supervisor at Mother Jones during the complained of series of events.  Mr. Butler possessed supervisory authority over Plaintiff. In his role, Mr. Butler had the ability to discipline Plaintiff.

19.     Both Mr. Butler and Plaintiff were assigned by Defendant to perform their job duties at Mother Jones.

20.     As a Custodian at Mother Jones, Plaintiff's duties included, but were not limited to, general custodial services such as making minor building maintenance and repairs, cleaning and stocking of rooms, and insuring buildings are secure.

21.     Beginning on or about June 2015, Mr. Butler began to harass Plaintiff on the basis of her sex by grabbing and scratching his groin and overtly pulling on his penis in Plaintiff's presence.  Plaintiff was offended by Mr. Butler's actions.

22.     At all times relevant to this action, Mr. Butler's actions directed to Plaintiff were unwelcomed, offensive, and based on sex.

23.     However, Mr. Butler was amused and took joy in the discomfort his unwelcomed and offensive sex-based behavior caused Plaintiff to experience.

24.     Plaintiff refused to respond to Mr. Butler's inappropriate and offensive conduct.

25.     On or around this time, Plaintiff reported the incident to her immediate supervisor, Mr. Rouse.

26.     Shortly thereafter, Mr. Rouse spoke to Mr. Butler about his inappropriate and offensive conduct. Aware of the inappropriate and offensive nature of his action, Mr. Butler attempted to justify his conduct to Mr. Rouse, explaining that he "had a rash" in his groin area, which is why he was grabbing and scratching his groin and pulling on his penis.

27.     Plaintiff and Mr. Rouse hoped that following Mr. Rouse's conversation with Mr. Butler, Mr. Butler would correct his offensive and unwelcomed sex-based behavior.

28.     Despite being spoken to by Mr. Rouse, Mr. Butler did not correct his offensive and unwelcomed sex-based behavior. Instead, Mr. Butler escalated his offensive and unwelcomed sex-based behavior towards Plaintiff. Mr. Butler's aggression towards Plaintiff was driven by Plaintiff's continuous refusal to engage with Mr. Butler in his inappropriate conduct, which Mr. Butler desired, and her complaint to Mr. Rouse.

29.     Mr. Butler now aggressively scratched and grabbed his groin and pulled on his penis in Plaintiff's presence, making Plaintiff feel extremely uncomfortable. Mr. Butler's unwelcomed and offensive sex-based behavior towards Plaintiff continued unabated.

30.     On or about February 2, 2016, Plaintiff complained to Mother Jones' Head Secretary, Shelly Jackson, ("Ms. Jackson"). Ms. Jackson worked as a secretary in Mother Jones' Principal's Office.

31.     Ms. Jackson was a point of contact for escalated complaints of Plaintiff's nature at Mother Jones.

32.     On or around this time, Plaintiff detailed to Ms. Jackson Mr. Butler's unwelcomed and offensive sex-based behavior. Plaintiff explained to Ms. Jackson that she felt "uncomfortable"

continuing to work on the night shift with Mr. Butler.  In response, Ms. Jackson told Plaintiff to "try and stay in the view of the cameras."  Ms. Jackson did not further escalate Plaintiff's complaint to Mother Jones' Principal or any other appropriate agent of Defendant.

33.     Additionally, Ms. Jackson did not address Plaintiff's complaint with Mr. Butler or take actions to have Mr. Butler's actions addressed by another agent of Defendant.

34.     Plaintiff memorialized her complaint to Ms. Jackson in writing and provided the statement to Defendant.

35.     Nevertheless, Mr. Butler continued to engage in his purposeful, unwelcomed and offensive sex-based behavior by continuing to aggressively scratch and grab his groin and pull on his penis in Plaintiff's presence.

36.     On or about June 22, 2016, Plaintiff, Mr. Rouse, and Mr. Butler were working together during summer cleaning of Mother Jones. While performing their custodial duties, in the presence of Mr. Rouse, Mr. Butler turned toward Plaintiff, stared her directly in the eye, and grabbed his penis over the top of his pants, the shape of which was plainly visible to Plaintiff.  Mr. Butler's behavior was inappropriate, unwanted, unwelcomed, and offensive.

37.     Noticing that Plaintiff's extreme discomfort was visible, Mr. Butler laughed.  Mr. Butler took joy and pleasure in his unwelcomed and offensive sex-based behavior due to the plain and understandable discomfort Plaintiff experienced as a result.

38.     Mr. Rouse personally witnessed Mr. Butler's inappropriate, offensive, and sexually aggressive behavior towards Plaintiff on this day.  Mr. Rouse was, likewise, offended.

39.     Shortly following the incident, Plaintiff gave a written statement to Mr. Rouse concerning Mr. Butler's continued inappropriate, unwanted, unwelcomed, and offensive sex-based behavior. Mr. Rouse gave copies of Plaintiff's statement to PGCPS Coordinator, Indigo Davis,

("Mr. Davis"), Ms. Jackson, and Mother Jones' Principal, Niki Brown, ("Ms. Brown"). In response, Ms. Jackson stated to Plaintiff, "I've seen [Mr. Butler] do this before."  Mr. Rouse took such actions because Mr. Butler's behavior continued unabated and Defendant failed to correct such behavior.

40.     Mr. Davis, after receiving the written complaint of Plaintiff, came to Mother Jones to "investigate" Plaintiff's complaint.

41.     However, Mr. Davis was annoyed by Plaintiff's complaint. Mr. Davis disregarded and dismissed Plaintiff's complaint concerning the unwelcomed and offensive sex-based conduct of Mr. Butler out-of-hand.  Pointedly, Mr. Davis only spoke with Mr. Rouse and not Ms. Ivison. Mr. Davis took no action in response to Plaintiff's complaint.

42.     At the end of Mr. Davis' brief meeting with Mr. Rouse, Mr. Davis flippantly instructed Mr. Rouse to simply refer Plaintiff to the PGCPS anti-harassment policy, as if the policy was a panacea to Mr. Butler's continued, aggressive sex-based behavior.

43.     At no time did Mr. Davis ever speak to Plaintiff regarding her complaint or Mr. Butler's sex-based behavior.  Mr. Davis did not conduct any form of an investigation into the details of Plaintiff's statement.

44.     Outside of Mr. Davis' meeting with Mr. Rouse, Mr. Davis took no further action concerning Plaintiff's complaint.

45.     On or about July 6, 2016, Mr. Davis held a meeting for the custodial staff at Mother Jones. At this meeting, Plaintiff again informed Mr. Davis that she was uncomfortable working with Mr. Butler.

46.     Once again, Mr. Davis disregarded and dismissed Plaintiff's concerns.  Again, Mr. Davis took no action in regard to Plaintiff's complaint.

47.     During this time, Plaintiff continued to express to Mr. Rouse that she was uncomfortable working with Mr. Butler because of his continued unwelcomed, offensive, and sexually aggressive behavior towards her.

48.     However, no remedial measures were taken against Mr. Butler or to adjust Plaintiff's work schedule.

49.      Defendant, by and through the conduct of its agents, continued to force Plaintiff to work in close proximity to Mr. Butler until he was transferred in August 2016, nearly three months after Plaintiff's complaint to Mr. Davis, Ms. Jackson, and Ms. Brown, and over one year after her initial complaint concerning Mr. Butler's harassing, offensive, and sex-based behavior to Mr. Rouse.

50.     On or about May 2016, Plaintiff became aware of rumors at Mother Jones that Jennifer Animashaun, an African-American woman and the Cafeteria Manager at Mother Jones, had degraded and insulted Plaintiff on the basis of her race to other employees of Mother Jones.

51.     Specifically, Ms. Animashaun launched race-based insults towards Plaintiff, frequently failing to refer to her by name, but, instead, as "a dirty white bitch" to other employees at Mother Jones.  Ms. Animashaun purposely referred to Plaintiff as "a dirty white bitch" to degrade and offend Plaintiff on the basis of Plaintiff's race.

52.     On or about the end of May 2016, Ms. Animashaun approached Mr. Rouse and informed him that she wished to physically assault Plaintiff because of her race.

53.     Ms. Animashaun told Mr. Rouse that she "wanted to fight that dirty white bitch."

54.     During her conversations with Mr. Rouse, Ms. Animashaun did not refer to Plaintiff by her name, but rather, as that "dirty white bitch."  Ms. Animashaun purposely referred to Plaintiff as a "dirty white bitch" to degrade and offend Plaintiff on the basis of Plaintiff's race.

55.     Ms. Animashaun's degrading, humiliating, and race-based behavior towards Plaintiff only escalated.

56.     Specifically, on or about June 1, 2016, while in the Mother Jones' cafeteria kitchen, Plaintiff observed Ms. Animashaun mix together a large bucket of water and bleach and purposefully dump the entire mixture on the floor.

57.     Ms. Animashaun did so to require 'the dirty white bitch" to clean up the mess in ankle deep diluted bleach.

58.     Ms. Animashaun then turned to Plaintiff and demanded for Plaintiff to clean up the purposeful spill.

59.     Plaintiff immediately complained of Ms. Animashaun's conduct to Mr. Rouse.  Mr. Rouse went with Plaintiff to the cafeteria kitchen and personally observed the entire kitchen flooded in the diluted bleach mixture. Mr. Rouse, an African-American male, was disgusted with Ms. Animashaun's actions.

60.     Plaintiff was degraded, humiliated, and embarrassed by Ms. Animashaun's vicious and vile race-based conduct.

61.     Due to Ms. Animashaun's degrading, humiliating, and race-based behavior towards Plaintiff, both Plaintiff and Mr. Rouse went to Principal Brown's office to complain about Ms. Animashaun's race-based behavior towards Plaintiff.

62.     However, Ms. Brown, an African-American female, was unmoved and unconcerned by Plaintiff's and Mr. Rouse's complaint. Mr. Brown took no action against Ms. Animashaun in response.

63.      No agent of Defendant ever took any remedial action in response to Ms. Animashaun's race-based actions towards Plaintiff.

64.     The next day, on or about June 2, 2016, Plaintiff, again, heard from other employees at Mother Jones' that Ms. Animashaun was referring to Plaintiff as a "dirty white bitch."

65.     On or about June 3, 2016, Plaintiff complained to Christell Ross, ("Ms. Ross"), Mother Jones' Supervisor for Food and Nutrition.

66.     Ms. Ross, an Africa-American female, was also unconcerned and unmoved by Plaintiff's complaint of Ms. Animashaun's degrading, humiliating, and race-based behavior towards Plaintiff.

67.     In response to Plaintiff's complaint, Ms. Ross told Plaintiff that "you two need to get along" with Ms. Animashaun despite her race-based conduct.  Like other agents of Defendant, Ms. Ross took no action concerning Plaintiff's complaint.

68.     Ms. Animashaun's degrading, humiliating, and race-based behavior took an emotional toll on Plaintiff.  Furthermore, due to Ms. Animashaun's deep negative animus towards Plaintiff on the basis of her race, Plaintiff felt threatened at Mother Jones and dreaded going to work each day. Plaintiff knew that she would likely be subjected to discriminatory behavior by Ms. Animashaun and possibly encounter physical violence because of her race.

69.     On or about August 23, 2016, Mr. Ruse left the employment of Defendant.

70.     The individual selected by Defendant to replace Mr. Rouse, and serve as Plaintiff's direct supervisor, was directly related to Mr. Butler.

71.     Ms. Ivison reasonably feared retaliation from her new supervisor due to his familial relationship with Mr. Butler and Ms. Ivison's previous complaints concerning Mr. Butler's discriminatory, sex-based behavior.

72.     As a result of the cumulative stress of Ms. Ivison's unresolved complaints concerning discriminatory race- and sex-based behavior she was subjected to from June 2015

11

through August 2016, in addition with having to report to a relative of Mr. Butler, Ms. Ivison's working conditions became intolerable.

73.     Consequently, on or about August 26, 2016, Ms. Ivison was left with no choice but to resign from her employment with Respondent rather than being forced to continually suffer from an unlawful race- and sex-based hostile work environment.

**COUNT ONE**
**Unlawful Sex-Based Hostile Working Environment**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1)**

74.     Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

75.     As an employee of Defendant, Plaintiff was entitled to the protections of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), which prohibits discrimination in the workplace based on the basis of a person's sex.

76.     Defendant is responsible for the acts of its employees and non-employees concerning sexual and sex-based harassment in the workplace under circumstances where Defendant either knows or should have known of sexually harassing behavior towards one of its employees and fails to take immediate and appropriate corrective action. 29 C.F.R. § 1604.11(e).

77.     Plaintiff is a female, a protected class under Title VII.

78.     As detailed above, Plaintiff was caused to work in an environment where she was caused to suffer unwanted, unwelcomed, and offensive discriminatory, verbally harassing, and abusive behavior by Custodial Night Lead Supervisor, Delonte Butler, PGCPS's agent, on the basis of Plaintiff's sex. At all times relevant to this action, Mr. Butler was Plaintiff's shift manager and had the ability to discipline her.

79. Mr. Butler repeatedly scratched and grabbed his groin and pulled on his penis in the presence of Plaintiff even after being told by Mr. Rouse that his lewd behavior was inappropriate.

80. On one occasion, Mr. Butler grabbed his penis in Plaintiff's presence, Mr. Butler laughed at Plaintiff's visible discomfort. The behavior was witnessed by Mr. Rouse.

81. Mr. Butler's sex-based behavior and conduct towards Plaintiff was unwanted, unwelcomed, and extremely offensive.

82. On multiple occasions, Plaintiff complained of Mr. Butler's unwanted, unwelcomed, abusive, and extremely offensive behavior to her supervisor, Mr. Rouse, and other agents of Defendant, including Ingo Davis, Shelly Jackson, and Nikki Brown.

83. At all times relevant to this action, neither Defendant nor any of its managerial employees or agents outside of Mr. Rouse took any action to investigate Plaintiff's complaints of Mr. Butler's unwelcomed, unwanted, and harassing behavior or seek to correct Mr. Butler's discriminatory sex-based behavior. Defendant took no corrective or remedial measures in response to Plaintiff's complaints regarding Mr. Butler.

84. Mr. Butler's unwelcomed, unwanted, and harassing behavior towards Plaintiff were so severe and/or pervasive that they altered the terms and conditions of her employment and created a hostile and abusive working environment.

85. As a further direct and legal result of Defendant and its agents' conduct, Plaintiff has been caused to suffer and did suffer from injuries, including but not limited to, emotional and mental distress, anguish, embarrassment, and humiliation.

86. Defendant and its agents' actions directly and proximately caused all injuries and damages sought herein.

Case 8:18-cv-03954-CBD   Document 1   Filed 12/21/18   Page 14 of 19

87.     Defendant's agent committed each act of sex-based discrimination against Plaintiff knowingly, intentionally, and maliciously. As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, and her litigation costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.      That the Court enter judgment in favor of Plaintiff and against Defendant;

b.      That the Court award Plaintiff compensatory damages, plus interest, against Defendant in an amount to be proven at trial;

c.      That the Court award Plaintiff her reasonable attorneys' fees and costs incurred in this litigation; and

d.      That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### COUNT TWO
**Unlawful Race-Based Hostile Working Environment**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1)**

88.     Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if herein fully set forth.

89.     As an employee of Defendant, Plaintiff was entitled to the protections of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), which prohibits discrimination in the workplace on the basis of a person's race.

90.     Defendant is responsible for the acts of its employees and non-employees concerning racial and race-based harassment in the workplace under circumstances where Defendant either know or should have known of racially harassing behavior towards one of its employees and fails to take immediate and appropriate corrective action. 29 C.F.R. § 1604.11(e).

91.     Plaintiff is a Caucasian female, a protected class under Title VII.

92.     As detailed above, from June 2016 until her constructive discharge in August 2016, Plaintiff was constantly subjected to inappropriate, unwelcomed, unwanted, abusive and humiliating race-based comments and conduct by Ms. Vera Animashaun.

93.     During Plaintiff's employment with Defendant, Ms. Animashaun repeatedly referred to Plaintiff, not by name, but as a "dirty white bitch" to Plaintiff's colleagues and supervisor, Mr. Rouse.

94.     Ms. Animashaun purposefully sought to demean and humiliate Plaintiff on the basis of Plaintiff's race.

95.     Ms. Animashaun's negative animus towards Plaintiff, on the basis of her race, was so strong that Ms. Animashaun told other Mother Jones Elementary employees that she wished to physically assault Plaintiff.

96.     Specifically, on or about June 1, 2016, while in the Mother Jones' cafeteria kitchen, Plaintiff observed Ms. Animashaun mix together a large bucket of water and bleach and purposefully dump the entire mixture on the floor.

97.     Ms. Animashaun did so to require 'the dirty white bitch" to clean up the mess in ankle deep diluted bleach.

98.     Plaintiff immediately complained of Ms. Animashaun's conduct to Mr. Rouse.  Mr. Rouse went with Plaintiff to the cafeteria kitchen and personally observed the entire kitchen flooded in the diluted bleach mixture. Mr. Rouse, an African-American male, was disgusted with Ms. Animashaun's actions.

99.     Plaintiff was degraded, humiliated, and embarrassed by Ms. Animashaun's vicious and vile race-based conduct.

100.    Due to Ms. Animashaun's degrading, humiliating, and race-based behavior towards Plaintiff, both Plaintiff and Mr. Rouse went to Principal Brown's office to complain about Ms. Animashaun's race-based behavior towards Plaintiff.

101.    However, Ms. Brown, an African-American female, was unmoved and unconcerned by Plaintiff's and Mr. Rouse's complaint. Mr. Brown took no action against Ms. Animashaun in response.

102.    Ms. Animashaun's derogatory comments and harassing behavior were unwanted, unwelcomed, abusive, and extremely offensive.

103.    At all times relevant to this action, neither Defendant nor any of its managerial employees or agents took any action to investigate Plaintiff's complaints of Ms. Animashaun's unwelcomed, unwanted, and harassing comments and behavior. In addition, Defendant took no corrective or disciplinary action against Ms. Animashaun.

104.    Ms. Animashaun's unwelcomed, unwanted, abusive, and harassing behavior towards Plaintiff were so severe and/or pervasive that they altered the terms and conditions of her employment and created a hostile and abusive race-based working environment.

105.    As a further direct and legal result of Defendant and its agents' conduct, Plaintiff has been caused to suffer and did suffer from injuries, including but not limited to, emotional and mental distress, anguish, embarrassment, and humiliation.

106.    Defendant and its agents' actions directly and proximately caused all injuries and damages sought herein.

107.    Defendant's agents committed each act of race-based discrimination against Plaintiff knowingly, intentionally, and maliciously. As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, and her litigation costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.      That the Court enter judgment in favor of Plaintiff and against Defendant;

b.      That the Court award Plaintiff compensatory damages, plus interest, against Defendant in an amount to be proven at trial;

c.      That the Court award Plaintiff her reasonable attorneys' fees and costs incurred in this litigation; and

d.      That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT THREE
### Unlawful Retaliation – Constructive Discharge
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)

108.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if herein fully set forth.

109.    As an employee of Defendant, Plaintiff was entitled to the protections of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), which prohibits an employer from taking retaliatory adverse action against an employee because the employee engaged in a statutorily protected activity.

110.    Plaintiff engaged in protected activity when she complained of Mr. Butler and Ms. Animashaun's unwanted, unwelcomed, abusive, and extremely offensive behavior to Defendant's agents at Mother Jones.  Defendant took no corrective or remedial action in response to Plaintiff's complaints.

111.    On August 23, 2016, Mr. Rouse resigned from his position as Building Superintendent. Mr. Rouse was replaced by an employee directly related to Mr. Butler, one of Plaintiff's harassers.

17

112.    On or about August 23, 2016, Mr. Ruse left the employment of Defendant.

113.    The individual selected by Defendant to replace Mr. Rouse, and serve as Plaintiff's direct supervisor, was directly related to Mr. Butler.

114.    Ms. Ivison reasonably feared retaliation from her new supervisor due to his familial relationship with Mr. Butler and Ms. Ivison's previous complaints concerning Mr. Butler's discriminatory, sex-based behavior.

115.    As a result of the cumulative stress of Ms. Ivison's unresolved complaints concerning discriminatory race- and sex-based behavior she was subjected to from June 2015 through August 2016, in addition with having to report to a relative of Mr. Butler, Ms. Ivison's working conditions became intolerable.

116.    Consequently, on or about August 26, 2016, Ms. Ivison was left with no choice but to resign from her employment with Respondent rather than being forced to continually suffer from an unlawful race- and sex-based hostile work environment, resulting in a retaliatory constructive discharge.

117.    As a further direct and legal result of Defendant and/or its agents' conduct, Plaintiff has been caused to suffer and did suffer from injuries, including but not limited to, economic loss, emotional and mental distress, anxiety, anguish, embarrassment, and humiliation.

118.    Defendant's action directly and proximately caused all injuries and damages sought herein.

119.    Defendant committed the act of retaliation knowingly, intentionally, and with malice. As a result, Plaintiff is entitled to an award of economic damages, plus interest, compensatory damages, litigation costs, and her reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.      That the Court enter judgment in favor of Plaintiff and against Defendant;

b.      That the Court award Plaintiff economic and compensatory damages, plus interest, against Defendant in an amount to be proven at trial;

c.      That the Court award Plaintiff her reasonable attorneys' fees and costs incurred in this litigation; and

d.      That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by a jury of her peers on all counts so triable.

DATED: December 21, 2018

Respectfully submitted,


 /s/ Jay P. Holland_____
Jay P. Holland, Esq.
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD  20770-1417
(240) 553-1198
(240) 553-1740 – Fax
jholland@jgllaw.com

*Counsel for Plaintiff Jennifer Ivison*